IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BRITTNEY WILSON and SHEMEKA WILSON as next of kin of RANDAL WILSON, and BRITTNEY WILSON as ADMINISTRATOR OF THE ESTATE OF RANDAL WILSON, deceased, <br><br> Plaintiff(s), <br><br> v. <br><br> WRCH TRANSPORT, INC., NAVNEET SINGH, and SECURITY NATIONAL INSURANCE COMPANY, <br><br> Defendant(s). | CIVIL ACTION NO. 5:24-cv-00205 |

## PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE SETTLEMENT

COME NOW, Plaintiffs, Brittney Wilson and Shemeka Wilson as next of kin of Randal Wilson, and Brittney Wilson as Administrator of the Estate of Randal Wilson, deceased (collectively, referred to as "Plaintiffs") and file this Response in Opposition to Defendants' Motion to Enforce Settlement, showing the Court that for the following reasons, this motion should be DENIED.

## **INTRODUCTION**

This lawsuit arises from a tractor-trailer collision that occurred on May 21, 2024. Plaintiffs filed this action against Defendants WRCH Transport, Inc., Navneet Singh, and Security National Insurance Company on June 28, 2024. Plaintiffs exchanged written discovery with Defendants Navneet Singh, WRCH Transport, Inc., and Security National Insurance Company. After exchanging written discovery Plaintiffs were satisfied that Defendants were insured by a single one million dollar insurance policy issued by Defendant Security National. On March 4, 2025, at approximately 2:50 p.m., Plaintiffs offered by email to accept the policy limits contained in Defendant Security National's

insurance policy, which was the only insurance policy Plaintiffs were aware of at that time, "subject to the terms of an attached limited liability release" and on the further conditoin that payment be delivered to Plaintiffs' counsel office by that Friday at noon. Counsel for Defendants responded to Plaintiff's email at 3:31 p.m. "Please send us a W9." Thirty-five seconds later, counsel for Defendants sent a second response email, "[a]nd we can send directly to you if you will send us your fed ex account number." At approximately 3:42 p.m. counsel for defendants emailed rejecting Plaintiffs' offer by refusing the deadline for payment of the settlement funds and demanding that additional parties, including two new insurance companies, be added as releasees. Defendants' email stated:

> [w]e are going to work on getting you the check as soon as we can, but Friday, March 7 is simply not possible. We do need some additional parties added to the Release – Please add Malkeet Singh, Amtrust Financial Services and Wesco Ins. Company to the document. Once we receive the Release we can send the check to you."

Plaintiffs' counsel replied at approximately 3:53 p.m. stating, "[w]e will resolve this case for the limited release previously sent to you with the check being received by Friday." At 4:29 p.m., Plaintiffs' counsel emailed counsel for Defendants and stated "[a]ctually given your request for additional released parties, we cannot move forward with a settlement at this time."

Given the Defendants' rejection of Plaintiffs' offer, Plaintiffs have continued to prepare the case for trial. Defendants now seek a Motion to Enforce Settlement and argue that the parties entered into a binding settlement agreement; however, Defendants have failed to meet their burden in establishing that a binding settlement agreement was entered by the parties. More specifically, the Defendants have failed to show that there was an unconditional and unequivocal acceptance of either Defendants' February 21, 2025 offer or Plaintiffs' March 4th counteroffer. Therefore, Defendants' Motion to Enforce Settlement should be DENIED.

## STATEMENT OF FACTS

On May 21, 2024, Randal. Wilson was operating a 1999 Freightliner Conventional when he was involved in a tractor-trailer collision with Defendant Navneet Singh, which resulted in Randal Wilson burning alive. [Doc. 1, p. 4]. Immediately following the collision, Defendant Navneet Singh was transported to Fairview Park Hospital in Dublin, Georgia, and was subsequently detained by ICE. [See Ex. A, DPS Incident Report]. At the time of the collision, Defendant Navneet Singh was operating a 2020 Freightliner Conventional owned by Defendant WRCH Transport, Inc. (hereinafter "Defendant WRCH"), a California corporation, and insured by Defendant Security National Insurance Company (hereinafter "Defendant Security National"). [Doc. 1, p.4]. As a result of the collision, Plaintiffs filed the subject lawsuit on June 28, 2024. [Doc. 1].

Immediately after the filing of the lawsuit, Plaintiffs began to work diligently to locate and serve each Defendant with the lawsuit. On July 18, 2024, Plaintiffs served Defendant Security National, and on August 1, 2024, Plaintiffs served Defendant Navneet Singh at the Stewart County Detention Center. [Doc. 13; Doc. 11]. On August 8, 2024, Defendant Security National filed its Answer and Certificate of Interested Persons and Corporate Disclosure Statement. [Doc. 8]. On August 21, 2024, Defendant Navneet Singh filed his Answer. [Doc. 9]. Defendant Security National's Certificate of Interested Parties stated that it was owned by AmTrust Financial Services, Inc., but did not name Wesco Insurance Company as having a financial interest in the case. [Doc. 8].

From August 2024 through November 2024, Plaintiffs made several unsuccessful attempts to serve Defendant WRCH's owner, Malkeet Singh (hereinafter "Mr. Singh"), at his address in Fresno, California. During this time, Plaintiffs learned that Defense counsel was also having trouble reaching Mr. Singh and that Mr. Singh either traveled out of the country shortly after the accident or was evading service and his attorneys. [See generally Doc. 23]. Plaintiffs were finally able to serve

Defendant WRCH's BOC-3 agent on December 3, 2024. [Doc. 25]. On December 23, 2024, Defendant WRCH filed its Answer and Certificate of Interested Persons and Corporate Disclosure Statement. [Doc. 26; Doc. 28].

On December 9, 2024, Plaintiffs served Interrogatories, Requests for Production of Documents, and Requests for Admissions on Defendants. On December 11, 2024, counsel for Defendants offered to settle the case for the purported policy limits of $1,000,000.00 contained in Defendant Security National's policy limits and advised Plaintiffs' counsel that Defendant Navneet Singh had been deported. [See Ex. B, Bill Allred's correspondence to Plaintiff's counsel dated December 11, 2024]. On January 23, 2025, Plaintiffs sent Defendants an offer to settle the case for two million dollars, based on a reasonable construction of the insurance policy that listed the tractor and trailer involved in the wreck as separate units under the policy, each with a $1,000,000.00 limit. [See Ex. C, Plaintiff's Correspondence to Defense counsel dated January 23, 2025].

On February 11, 2025, Defendants served their discovery responses on Plaintiffs, and counsel for Defendants advised that he still had not been in contact with Mr. Singh. [See Ex. D, Denisha Collins Correspondence to Plaintiff's counsel dated February 11, 2025].

On February 21, 2025, Defendants rejected Plaintiffs' January 23, 2025, demand and offered to settle the case for the policy limits contained within Defendant Security National's policy. [See Ex. E, TaJuana Hunter Correspondence to Plaintiffs' counsel dated February 21, 2025]. Defendants offer stated in part, "[I]f this offer is not accepted in 10 days, Security National will seek an award of attorney fees from your firm and your clients if litigation continues. [See Ex. E, TaJuana Hunter Correspondence to Plaintiffs' counsel dated February 21, 2025]. Plaintiffs then chose to authorize their counsel to demand the one million dollars that Defendants contended to be the policy limits of Defendant Security National. On March 4, 2025, at approximately 2:50 p.m., Plaintiff's counsel

emailed defense counsel offering to accept the policy limits contained in Defendant Security National's insurance policy, conditioned on Defendants' acceptance of certain material terms. Plaintiffs' March 4th correspondence stated in part, "[w]e are authorized to accept that offer on behalf of our clients subject to the terms of the attached limited liability release... Payment shall be delivered to our Macon office by Friday, March 7, 2025 by 12:00 p.m."  [See Ex. F Quintesha Reynolds correspondence to TaJuana Hunter dated March 4, 2025].

Counsel for Defendants responded at 3:31 p.m. "Please send us a W9."  [See Ex. L Elizabeth Howard's email correspondence to Quintesha Reynolds dated March 4, 2025]. Thirty-five seconds later, counsel for Defendants responded "[a]nd we can send directly to you if you will send us your fed ex account number." [See Ex. M Elizabeth Howard's email correspondence to Quintesha Reynolds dated March 4, 2025]. Counsel for Defendants responded at 3:42 p.m. stating, "[w]e are going to work on getting you the check as soon as we can, but Friday March 7 is simply not possible. We do need some additional parties added to the Release – Please add Malkeet Singh, Amtrust Financial Services and Wesco Ins. Company to the document. Once we receive the Release we can send the check to you." [See Ex. G, Elizabeth Howard's email correspondence to Quintesha Reynolds dated March 4, 2025]. This was the first time Plaintiffs were made aware of Wesco Insurance Company having any role in the instant case as Wesco Insurance Company was not disclosed in Defendants' Corporate Disclosures, Initial Disclosures, or in Defendants' written discovery responses. [See Doc. 8; Doc. 28; Ex. H Defendants Navneet Singh and Security National's Initial Disclosures; Ex. I, Defendant WRCH Initial Disclosure]. Additionally, while Amtrust Financial Services was disclosed as the parent company of Security National, Amtrust was never identified as an insurer of Defendants that would have potential liability in this case that would necessitate it being listed as a releasee in any settlement agreement.

At approximately 3:53 p.m., Plaintiffs' counsel responded to defense counsel stating, "[w]e will resolve this case for the limited release previously sent to you with the check being received by Friday." [See Ex. J, Jessica Edmonds email correspondence to Elizabeth Howard dated March 4, 2025]. At 4:29 p.m., (before any response by defense counsel responding to Plaintiff's counsel's 3:53 p.m. email) Plaintiffs' counsel emailed defense counsel stating, "[a]ctually given your request for additional released parties, we cannot move forward with a settlement at this time." [See Ex. K, Jessica Edmonds email correspondence to Elizabeth Howard dated March 4, 2025]. Defense counsel responded several times asking "is the settlement really off because we made a mistake?" [See Ex. N, Elizabeth Howard email correspondence to Plaintiffs' counsel dated March 4, 2025]. Following Defendants rejection of Plaintiffs' March 4th counteroffer, Plaintiffs' resumed preparing the case for trial.

On March 6, 2025, Defendants sent Plaintiffs' counsel a letter stating, "[w]e accept the settlement as set out [in your letter dated March 4, 2025]. We are providing the settlement check to your office according to the instructions and deadline you stated in your letter. We agree to accept the terms set out in the Limited Release you provided." [See Ex. O. Elizabeth Howard correspondence to Plaintiffs' counsel dated March 6, 2025]. It should be noted that in spite of Plaintiffs' Counsel stating there was no settlement, counsel for the Defense sent the March 6 check via Plaintiffs' counsel fed ex number and account.

On April 11, 2025, coverage counsel for Security National, sent Plaintiffs' counsel a letter stating "Security stands ready to resolve this matter amicably and again tenders its entire $1,000,000 policy limit to resolve this matter, consistent with the conditions of your renewed March 4, 2025 offer." [See Ex. P, Kim Jackson correspondence to Plaintiffs' counsel dated April 11, 2025].

## ARGUMENT AND CITATION OF AUTHORITY

Under federal law, a motion to enforce a settlement agreement is a purely equitable claim that is resolved by the court. Adams v. Equifax Information Services, LLC, 2023 WL 7458848, *3 (N.D.

Ga. 2023). Therefore, unlike Georgia state law, where a motion to enforce settlement is analyzed using the same framework used when deciding a motion for summary judgment, this Court may summarily enforce a settlement agreement as a matter of federal procedural law.  Id.

Nevertheless, the construction and enforcement of settlement agreements are governed by the law of the forum state. Id. Hence, although the Court may summarily enforce a settlement agreement as a matter of federal procedural law, Georgia substantive law controls on a motion to enforce a settlement agreement. Crumpler v. Westlake Services Holding Company, 2025 WL 487312, *1 (M.D. Ga. 2025). As with any contract, the party asserting the existence of a binding settlement agreement has the burden of proving its existence and its terms. See Kemper v. Brown, 325 Ga. App. 806 (2014).

I.    **Defendants' Motion to Enforce Settlement should be denied as Plaintiff's March 4th Correspondence Constituted a Counteroffer, which was rejected by Defendants.** Under Georgia law, settlement agreements are subject to "the same requirements of formation and enforceability as other contracts." Grange Mut. Cas. Co. v. Woodard, 300 Ga. 848, 852 (2017) (citations omitted). Hence, a binding settlement agreement is formed "when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." Progressive Mountain Insurance Company v. Butler, 364 Ga. App. 439, 442 (2022). For that reason, when an offer to settle has been extended, an answer to the offer will only constitute an acceptance when it is "unconditional and identical with the terms of the offer." Id.

When determining if parties had the mutual assent or meeting of the minds necessary to reach an agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent. Groves v. Gibbs, 367 Ga. App. 730 (2023); see also Wright v.

Nelson, 358 Ga. App. 871, 874 (2021). Additionally, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence. McReynolds v. Krebs, 290 Ga. 850, 853 (2012) (citation omitted).

While it is true that compromises of doubtful right are generally upheld as a matter of policy, courts are "limited to those terms upon which the parties themselves have mutually agreed." Sherman v. Dickey, 322 Ga. App. 228, 231 (2013). If no such mutual agreement exists, then there is no enforceable contract between the parties. Id. Therefore, "an answer to an offer will not amount to an acceptance, so as to result in a contract unless it is unconditional and identical with the terms of the offer. The offer must be accepted unequivocally and without variance of any sort." Id. at 231-32.

### a. Plaintiffs' March 4th Correspondence imposed new conditions, which made it a counteroffer.

While Plaintiffs' March 4th correspondence was titled "Wilson Acceptance Letter," the terms of the document imposed new conditions, which made it a counteroffer rather than an acceptance. It has been long held that "if a purported acceptance of the plaintiff's [or defendant's] settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance." Sherman v. Dickey, 322 Ga. App. 228, 231 (2013). See Kemper v. Brown, 325 Ga. App. 806, 808 (2014) (citation omitted) (holding "[a] purported acceptance of an offer that varies even one term of the original offer is a counteroffer"); Pritchard v. Mendoza, 357 Ga. App. 283 (2020); Frickey v. Jones, 280 Ga. 573 (2006).

In deciding whether a purported acceptance imposes conditions rendering it a counteroffer, the court must consider whether additional terms are "precatory words." Turner v. Williamson, 321 Ga. App. 209, 212 (2013). "Precatory words are words whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction." Id. If it is determined that the

additional terms are not precatory words the purported acceptance is deemed a counteroffer. <u>See generally</u> <u>Kemper v. Brown</u>, 325 Ga. App. 806 (2014).

For example, in <u>Kemper v. Brown</u>, the plaintiff sent a demand to the liability carrier that stated in part, "[t]he release must not have any language saying that I will have to pay Mr. Brown or his insurance company any of their incurred costs. The check should be made payable to Amy M Kemper …. It must be delivered no later than June 8, 2012 (21 days) from today's date." <u>Id.</u> at 807. On June 5, 2012, the liability carrier responded and stated, "in concluding the settlement, we are entrusting that you place money in an escrow account in regards to any and all liens pending. <u>Id.</u> This demand is being asserted to protect the lien's interest." <u>Id.</u> The liability carrier's purported acceptance also attached a limited liability release, which contained indemnification language. Id. The Georgia Court of Appeals held that the liability carrier's response clearly constituted a counteroffer rather than an unconditional equivocal acceptance. <u>Id.</u> at 808. The court reasoned that the liability carrier's response demanded that the plaintiff place settlement funds into an escrow account for the purpose of protecting the interests of any pending liens. The court further reasoned that the liability carrier use of the term "demand" "clearly expressed a condition that [the plaintiff] was required to satisfy for [the liability carrier's] acceptance to be effective." <u>Id.</u>

Similarly, in the present case, Plaintiff's March 4th correspondence included additional terms that were mandatory, which made it a counteroffer. In Plaintiffs' March 4th correspondence, Plaintiffs specifically stated that their acceptance of the policy limits was "subject to the terms of the attached limited liability release" and that "payment shall be delivered" to Plaintiffs' counsel office by that Friday at noon. The inclusion of those terms expressed a condition that Defendants were required to agree and satisfy in order for a binding settlement to be formed. A reasonable person would interpret

this as a mandatory direction, rather than a mere recommendation, particularly in light of the mandatory phrases "subject to the terms of" and "payment shall be delivered."

The attached limited liability release contained material terms that were not included in Defendants' offer. The limited liability release stated in part, [t]his limited release shall not operate as a release of any other persons or entities not specifically named herein…" Additionally, the limited liability release went on to include how the enforceable liens would be handled and how the settlement funds would be split between the estate and wrongful death claims. Therefore, Plaintiffs' March 4th correspondence was a counteroffer rather than an unconditional and unequivocal acceptance of Defendants' offer.

### b. Defendants' response to Plaintiffs' March 4th counteroffer was not an unequivocal acceptance of Plaintiffs' counteroffer.

The parties did not reach a binding settlement agreement because Defendants' response to Plaintiffs' March 4th counteroffer was not unconditional and identical with the terms of Plaintiffs' counteroffer, but was itself another counteroffer. "To establish a contract, the offer must be accepted unequivocally and without variance of any sort. Kemper v. Brown, 325 Ga. App. 806, 808 (2014) (citation omitted). See also Wright v. Nelson, 358 Ga. App. 871 (2021) (holding "No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced").  Therefore, when an offer is not accepted unequivocally and without variance of any sort, no binding settlement agreement is formed. See Bennett v. Novas, 364 Ga. App. 364, 365 (2022).

For example, in Bennett v. Novas, the plaintiff offered to settle her personal injury claim for the liability carrier's policy limits subject to a limited liability release. Bennett v. Novas, 364 Ga. App. 364, 365 (2022). The liability carrier responded to the plaintiff's offer and asked that an additional party be named on the limited liability release. Id. The liability carrier subsequently sent a letter

accepting the plaintiff's offer along with a settlement check. Id. The plaintiff filed suit, and the defendant filed a motion to enforce the settlement. Id. The Georgia Court of Appeals held that the defendant's response to the plaintiff's offer constituted a counteroffer, and the parties had not reached a binding settlement agreement. Id. at 876-77.  The court reasoned that the plaintiff's offer letter was plain and unambiguous with respect to the two parties the plaintiff was willing to release, and the liability carrier's response was not identical to the terms of the offer because it sought to add an additional party to the release that was not identified in the plaintiff's offer. Id. at 877.

Likewise, in the present case, Defendants' response to Plaintiffs' March 4th counteroffer constituted a counteroffer, and the parties did not reach a binding settlement agreement.  Plaintiffs' March 4th counteroffer was plain and unambiguous with respect to the parties Plaintiffs was willing to release, as the parties to be released were specifically listed in the limited liability release that was a material condition of Plaintiffs' counteroffer. However, defense counsel's 3:42 p.m. email in response to Plaintiffs' March 4th counteroffer was not identical with the terms of the offer. Defense counsel's email did not merely inquire whether the three additional parties could be added to the settlement release, and did not pose any questions to Plaintiffs' regarding the parties Plaintiffs had offered to release. Instead, defense counsel's email demanded that Plaintiffs add three additional parties to the settlement release, advised they could not send the check by that Friday at noon, and requested that a signed release be provided prior to the liability carrier sending the check. Therefore, Defendants' response to Plaintiffs' March 4th counteroffer was not an unconditional and unequivocal acceptance, and no binding settlement agreement was formed between the parties.

While Defendants argue that defense counsel's March 4th 3:31 p.m. emails requesting plaintiffs' counsel W-9 and FedEx account number should be construed as an acceptance, those emails from defense counsel would not lead Plaintiffs' counsel or any reasonable person to believe

the Defendants unequivocally accepted the counteroffer. Instead, the defense counsel's emails merely requested the firm's W9 and FedEx account number in the event Defendants decided to accept Plaintiffs' counteroffer. A reasonable person would determine from those two emails that Defendants were considering Plaintiffs' counteroffer, but nothing in either email purports to accept any of the terms of the counteroffer. Hence, defense counsel's email requesting the firm's W9 and FedEx account number did not unequivocally accept Plaintiffs' counteroffer.

Moreover, defense counsel's March 4th 3:42 p.m. email supports the inference that defense counsel did not intend that the forwarding of the W9 and FedEx number to be an unequivocal acceptance of Plaintiff's counteroffer. Defense counsel's subsequent email demanded that three additional parties be added to the release, advised they could not send the check by that Friday at noon, and requested that a signed release be provided prior to the liability carrier sending the check. Therefore, the defendants did not unequivocally accept the material terms of Plaintiff's counteroffer. For that reason, there was no meeting of the minds, and no binding settlement agreement was formed.

Furthermore, the April 11, 2025, correspondence from coverage counsel for Security National further supports the inference that no binding settlement agreement was entered by the parties. Coverage counsel's correspondence stated, "Security stands ready to resolve this matter amicably and again tenders its entire $1,000,000 policy limit to resolve this matter, consistent with the conditions of your renewed March 4, 2025 offer." If Defendants contended there was a binding settlement agreement, coverage counsel would not have offered to tender Defendants policy limits. Therefore, it would be inferred that the Defendants did not contend that there was a binding settlement agreement formed between the parties.

II.    **Despite defense counsel's contention that the Defendants accepted Plaintiffs' renewed offer, there was not an offer for defendants to accept at that time.**

When a party makes an offer, the offeror is free to revoke the offer at any time without restriction before the offeree accepts the offer. See O.C.G.A. § 13-3-2 ("The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition."). See also Kolbus v. Fromm, 327 Ga. App. 431 (2014) (holding there was no binding settlement agreement where the plaintiff withdrew her offer prior to the defendants accepting the offer).

In the present case, Plaintiffs' renewed their March 4th counteroffer in plaintiffs' counsel 3:53 p.m. email that stated "[w]e will resolve this case for the limited release previously sent to you with the check being received by Friday." [See Ex. J, Jessica Edmonds email correspondence to Elizabeth Howard dated March 4, 2025]. However, Plaintiffs' counsel withdrew the offer via email at 4:29 p.m., prior to defendants conveying an acceptance of the offer. Plaintiffs' counsel email stated, "given your request for additional released parties, we cannot move forward with a settlement at this time." While, Defendants argue that their March 6, 2025 correspondence to Plaintiffs' counsel unequivocally accepted Plaintiffs' March 4th counteroffer, Defendants rejected Plaintiffs' March 4th counteroffer and Plaintiffs renewed offered was withdrawn. Therefore, any alleged acceptance of Plaintiffs' offer after 4:29 p.m. could not create a binding settlement agreement as there was no offer by Plaintiffs for Defendants to accept at that time.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully requests that the Court DENY Defendants' Motion to Enforce Settlement.

This 17th day of June, 2025

/s/ Quintesha S. Reynolds
KATHERINE L. MCARTHUR
Georgia Bar No. 480730
JESSICA A. EDMONDS
Georgia Bar No. 675784

13

QUINTESHA S. REYNOLDS
Georgia Bar No. 210604

McArthur Law Firm
6055 Lakeside Commons Drive, Suite 400
Macon, Georgia  31210
(404) 565-1621 - Office
(404) 835-5050 - Facsimile
*qreynolds@mcarthurlawfirm.com*
***Attorneys for Plaintiffs***

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

BRITTNEY WILSON and SHEMEKA WILSON as
next of kin of RANDAL WILSON, and BRITTNEY
WILSON as ADMINISTRATOR OF THE ESTATE
OF RANDAL WILSON, deceased,

     Plaintiff(s),

     v.

WRCH TRANSPORT, INC., NAVNEET SINGH,
and SECURITY NATIONAL INSURANCE
COMPANY,

     Defendant(s).

CIVIL ACTION NO. 5:24-cv-00205

---

**CERTIFICATE OF SERVICE**

This is to certify that I electronically filed this ***Plaintiffs' Response in Opposition to Defendants' Motion to Enforce Settlement*** with the Clerk of Court using the EFSP system which will automatically send e-mail notification of such filing to the following attorneys of record:

**Elizabeth G. Howard, Esq.**
LEVY PRUETT CARTER
125 Clairemont Ave, Suite 410
Decatur, Georgia 30030
gg@levypruettcarter.com

This 17th day of June, 2025.

     */s/ Quintesha S. Reynolds*
     KATHERINE L. MCARTHUR
     Georgia Bar No. 480730
     JESSICA A. EDMONDS
     Georgia Bar No. 675784
     QUINTESHA S. REYNOLDS
     Georgia Bar No. 210604

MCARTHUR LAW FIRM
6055 Lakeside Commons Drive, Suite 400
Macon, Georgia 31210

15

(478) 238-6600 – Telephone
(478) 238-6607 – Facsimile
*qreynolds@mcarthurlawfirm.com*
***Attorneys for Plaintiffs***